UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

SHERNETT LEE, an individual,                    CASE NO.:

     Plaintiff,

vs.

VILLAGE OF ROYAL PALM BEACH,

     Defendant.

_____/

## AMENDED COMPLAINT

COMES NOW the Plaintiff, SHERNETT LEE (hereinafter "Ms. Lee" or "Plaintiff"), by and through the undersigned Counsel, and sues the Defendant, VILLAGE OF ROYAL PALM BEACH (hereinafter "the Village" or "Defendant") for violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. ("Title VII"), and the Florida Civil Rights Act of 1992, Florida Statutes §§ 760.01-760.11 (the "FCRA"). In support thereof, Plaintiff states as follows:

## JURISDICTION AND VENUE

1)     This Court is vested with federal question jurisdiction over Plaintiff's claims arising under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. ("Title VII"). This Court has supplemental jurisdiction over Plaintiff's related claims arising under state and local laws, pursuant to 28 U.S.C. § 1367.

2)     Venue lies within the Southern District of Florida, West Palm Beach Division, pursuant to 28 U.S.C. §§ 1391(b) and (c), because all actions relevant to the Plaintiff's claims arose in this Judicial Circuit.

1

## ADMINISTRATIVE PREREQUISITES

3)      All conditions precedent to the maintenance of this action have been met or waived.

4)      Plaintiff timely filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") within 300 days of the commission of the unlawful employment practices of Defendant. A copy of said Charge is attached hereto as **Exhibit "A."**

5)      On or about January 6, 2026, the U.S. Equal Employment Opportunity Commission issued a Notice of Right to Sue. A copy of said Notice of Right to Sue is attached hereto as **Exhibit "B."**.

6)      This Complaint is being filed within ninety (90) days of receipt of the Notice of Plaintiff's Right to Sue.

## PARTIES

7)      Plaintiff, SHERNETT LEE, is a resident of Palm Beach County, Florida, over the age of eighteen years, and otherwise *sui juis*.

8)      Plaintiff was and is a member of a protected group under Title VII and the FCRA's prohibitions against race discrimination and retaliation, namely: Plaintiff is Black.

9)      At all times material hereto, Defendant was and is an "employer" within the meaning of Title VII and the FCRA.

10)     Plaintiff was an "employee" of Defendant and an "aggrieved person" within the meaning of 42 U.S.C. § 2000e(f) and the FCRA § 760.02(10) during the times relevant to this Action.

**GENERAL ALLEGATIONS**

11)     Ms. Lee began working for the Village on November 12, 2013. During her interview prior to being hired, Ms. Lee was told that she would be filling a successor role to the position of Assistant Finance Director.

12)     Upon the Assistant Finance Director's retirement, however, Ms. Lee was offered a lower title of Accounting Manager. This role still performed the same tasks and responsibilities as the Assistant Finance Director position, but without the title.

13)     For the next five (5) years, Ms. Lee served as Accounting Manager, performing the duties that usually would have come with the Assistant Finance Director position while also taking on additional responsibilities.

14)     In 2019, the Finance Director, Stanley Hochman, approached Ms. Lee to discuss the potential for promotion to Assistant Finance Director. Ms. Lee enthusiastically agreed. However, while her promotion was initially approved by the Village Manager, the Manager rejected it two days later.

15)     Following further discussions between Ms. Lee and the Finance Manager, the Village Manager again approved Ms. Lee's promotion to Assistant Finance Director. This role included a 5% salary increase. However, despite agreeing to the change in title, the Village Manager did not approve the 5% increase in Ms. Lee's pay. Notably, two other employees – Maria Quintero (White female) and Jeffrey Sullivan (White male) – both received a 5% pay increase along with their simultaneous promotions.

16)     The hesitation to promote Ms. Lee and the denial of the 5% pay increase, in contrast with the promotion and raise given to her White colleagues, were motivated by racial animus.

3

17)     Following Finance Director Stanley Hochman's sudden passing in March of 2023, Ms. Lee was denied the opportunity to permanently fill his position, despite being the designated successor to that role as the Assistant Finance Director.

18)     Instead, Ms. Lee was placed as the Acting Finance Director and Treasurer while Defendant searched for someone to permanently fill the position. This was done despite the Village Manager stating that Ms. Lee's abilities to perform the role were not in question.

19)     In this same conversation, the Village Manager also commented that there were two likely successors for his position – the Finance Director and the Village Engineer. However, the Village Manager hinted that Ms. Lee (as a Black female) did not fit the mold of a likely successor. He also dismissed the significance of the Assistant Finance Director title she had been given years earlier, rhetorically asking "What was the big deal?" These comments were made with racial bias and were an attempt to discredit Ms. Lee's numerous contributions to Defendant to justify passing her over for the position.

20)     In June of 2023, Sharon Almeida, a 42-year-old White female with significantly fewer years of experience than Ms. Lee, was hired as the new Finance Director. At this time, Ms. Lee already had 27 years of government experience in accounting and finance.

21)     Shortly after the arrival of the new Finance Director, Sharon Almeida, Ms. Lee began to experience a hostile work environment.

22)     As the new Finance Director, Ms. Almeida terminated an employee by the name of Janet Campbell and hired her close friend, Melissa Maguire, who Almeida indicated was her only choice for the position, regardless of any other candidate's qualifications. When asked by the HR Director during her interview where she sees herself in a few years, Ms. Maguire openly stated that she intended to be Assistant Finance Manager, which was the position that Ms. Lee held.

23) After Ms. Maguire was hired, Ms. Almeida proceeded to reassign many of Ms. Lee's key responsibilities to Ms. Maguire, while simultaneously assigning Ms. Lee tasks with unreasonably short, sometimes impossible deadlines. This same pattern of conduct had been used to justify firing Ms. Campbell.

24) After a few "missed" deadlines, Ms. Almeida used Ms. Lee's performance as justification to recommend her demotion and a reduction in her salary on May 6, 2025.

25) This extremely unfair adverse action, taken after more than 11 years of hard work and devotion to Defendant, was so upsetting that Ms. Lee experienced an anxiety attack and was placed on two weeks of medical leave by her doctor starting on May 8, 2025.

26) During Ms. Lee's 11 years of working for Defendant, she noticed that Defendant's management engaged in a pattern of undermining Black employees and refrained from placing Black employees in key positions.

27) Over the course of 11 years, though Defendant had a total workforce of over 110 employees (and even more during the summer), there were only six (6) Black employees in the administrative office over that entire time.

28) A fellow Black employee, Jacqueline Shimhue-Davy, was also denied a promotion to Deputy City Clerk several times, even though she had performed the duties of the City Clerk in her absence for years.

29) Despite her 11-and-a-half-year tenure with Defendant, with consistent performance reviews stating that she exceeded expectations, Ms. Lee was not given the opportunity to have a one-on-one conversation with either the Village Manager or the HR Director regarding the complaints that Ms. Almeida brought against her.

30)     On April 11, 2025, Ms. Lee was brought into a meeting with the HR Director, who demanded that she sign a document regarding her performance. Plaintiff was not given a chance to review this document prior to signing, and the Director would not allow Plaintiff to leave until she signed the document. Plaintiff was only given the chance to write a rebuttal the next day, which she did, stating that she did not agree with the contents of the document, and that she was not allowed to review the document that she was forced to sign.

31)     While Ms. Lee was on medical leave following her anxiety attack, she was contacted by Defendant's HR department, which caused her additional stress and anxiety. HR demanded that she let them know if she would accept the demotion. If she refused, HR said that she would be fired. Ms. Lee asked if she could address this upon her return from leave, but was told she could not. HR insisted that she provide an answer by the end of the day on Friday, May 23, 2025, despite the fact that Ms. Lee was on medical leave and would not return to work until Tuesday, May 27.

32)     The thought of returning to this increasingly hostile work environment, where Ms. Lee knew she was being set up for failure and ultimate termination, was too much for her health to bear. She felt forced to resign although she had intended to remain with this employer until retirement.

33)     On May 23, 2025, due to the discriminatory and hostile work environment fostered by Defendant, Ms. Lee resigned her employment.

## COUNT I – RACE AND COLOR DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED
### (Disparate Treatment)

34)     Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 33 above as if fully set forth herein.

6

35)     Plaintiff is a member of a protected class due to her race (African American).

36)     At all times necessary, Plaintiff was qualified to perform her duties as Accounting Manager, Assistant Finance Director, and Acting Finance Director.

37)     During the course of Plaintiff's employment with Defendant, Plaintiff was subjected to a discriminatory, hostile, and offensive work environment because of her race and color, as more fully described in the General Allegations.

38)     The discriminatory, hostile, and offensive actions of Plaintiff's supervisors included, but were not limited to, the following:

i)   Humiliating Plaintiff in front of her co-workers and other staff members by speaking to her in a demeaning and demoralizing tone and dismissing her input;

ii)  Deliberately blocking Plaintiff's promotions and/or stripping her of titles while keeping her responsibilities the same;

iii) Deliberately excluding Plaintiff from the hiring process for the Finance Director position;

iv)  Denying Plaintiff the 5% promotional salary increase she was entitled to under Village policy upon her promotion to Assistant Finance Director in 2019.

v)   Stripping Plaintiff of key job responsibilities while simultaneously assigning Plaintiff tasks with unreasonably short deadlines designed to ensure failure; and

vi)  Using her failure to complete those unreasonable tasks as justification to demote her, reduce her salary, and threaten her with termination.

39)     The offensive and discriminatory conduct referred to in both the General Allegations and Paragraph 38 was offensive to Plaintiff and would be offensive to a reasonable person.

40) Plaintiff was subjected to the conduct referred to in the General Allegations and Paragraph 38 of this Complaint because of her race and color.

41) Plaintiff's supervisors directed the conduct referred to in this Complaint and Paragraph 38 to Plaintiff.

42) The demotion and forced resignation of Plaintiff constituted adverse employment actions taken against her, which were causally related to Plaintiff's race and color.

43) Similarly situated non-African American employees were treated more favorably by Defendant than Plaintiff. Specifically, the conduct endured by Plaintiff as referred to in the General Allegations and Paragraph 38 of this Complaint was not faced by Plaintiff's non-African American counterparts, who were by contrast promoted and given pay raises despite having substantially less experience than Plaintiff.

44) As a direct and proximate result of the foregoing, Plaintiff has suffered and continues to suffer embarrassment, humiliation, emotional distress, and other forms of damage.

45) Any alleged nondiscriminatory reason for this treatment by Defendant is a mere pretext for the actual reason for discriminating against Plaintiff for her race and color.

46) What is more, the aforementioned actions of Defendant were willful, wanton, intentional, and done with malice or with reckless indifference to Plaintiff's statutorily protected rights and the consequences of such actions, such that Plaintiff is entitled to punitive damages.

47) As a result of the deprivations of rights at the hands of Defendant, Plaintiff has been forced to hire an attorney and pay him a reasonable fee, which she is entitled to recover pursuant to 42 U.S.C. Section 2000e-5k and otherwise by law.

## COUNT II – RACE AND COLOR DISCRIMINATION
## IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT OF 1992
## (Disparate Treatment)

48) Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 33 above as if fully set forth herein.

49) At all times material hereto, Defendant failed to comply with the FCRA, which states, in part, that it is an unlawful employment practice for an employer "[t]o discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, national origin, age, handicap, or marital status."

50) Plaintiff is a member of a protected class due to her race and color (African American).

51) At all times necessary, Plaintiff was qualified to perform her duties as Accounting Manager, Assistant Finance Director, and Acting Finance Director.

52) During the course of Plaintiff's employment with Defendant, Plaintiff was subjected to a discriminatory, hostile, and offensive work environment because of her race and color, as more fully described in the General Allegations.

53) The discriminatory, hostile, and offensive actions of Plaintiff's supervisors and co-workers included, but were not limited to, the following:

    i) Humiliating Plaintiff in front of her co-workers and other staff members by speaking to her in a demeaning and demoralizing tone and dismissing her input;

    ii) Deliberately blocking Plaintiff's promotions and/or stripping her of titles while keeping her responsibilities the same;

9

iii) Deliberately excluding Plaintiff from the hiring process for the Finance Director position;

iv) Denying Plaintiff the 5% promotional salary increase she was entitled to under Village policy upon her promotion to Assistant Finance Director in 2019.

v) Stripping Plaintiff of key job responsibilities while simultaneously assigning Plaintiff tasks with unreasonably short deadlines designed to ensure failure; and

vi) Using her failure to complete those unreasonable tasks as justification to demote her, reduce her salary, and threaten her with termination.

54) The discriminatory conduct referred to in the General Allegations and Paragraph 53 was offensive to Plaintiff and would be offensive to a reasonable person.

55) Plaintiff was subjected to the conduct referred to in the General Allegations and Paragraph 53 of this Complaint because of her race and color.

56) Plaintiff's colleagues and supervisors directed the conduct referred to in this Complaint to Plaintiff and also failed to address it.

57) The demotion and forced resignation of Plaintiff constituted adverse employment actions taken against her, which were causally related to Plaintiff's race and color.

58) Similarly situated non-African American employees were treated more favorably by Defendant's supervisors than Plaintiff. Specifically, the conduct endured by Plaintiff as referred to in the General Allegations and Paragraph 53 of this Complaint was not faced by Plaintiff's non-African American counterparts, who were by contrast promoted and given pay raises despite having substantially less experience than Plaintiff.

59) As a direct and proximate result of the foregoing, Plaintiff has suffered and continues to suffer embarrassment, humiliation, emotional distress and other forms of damage.

60)     Any alleged nondiscriminatory reason for this treatment by Defendant is a mere pretext for the actual reason for discriminating against Plaintiff for her race and color.

61)     Defendant's actions were malicious and were recklessly indifferent to Plaintiff's rights pursuant to Fla. Stat. § 760.10.

62)     The aforementioned actions of Defendant were done wantonly, willfully, maliciously and with reckless disregard of the consequences of such actions.

63)     Plaintiff has been required to retain the legal services of the undersigned Counsel to enforce her rights under the FCRA and is required to pay her attorney a reasonable fee for services rendered in this cause, which she is entitled to recover pursuant to Fla. Stat.§ 760.021 and otherwise by law.

## COUNT III – HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED

64)     Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 33 above as if fully set forth herein.

65)     Under Title VII of the Civil Rights Act of 1964, as amended, "it shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).

66)     The phrase "terms, conditions, or privileges of employment" as included in 42 U.S.C. § 2000e et seq. evidences a congressional intent to strike at the entire spectrum of disparate treatment of men and women in employment, which includes requiring people to work in a discriminatorily hostile or abusive environment.  See *Harris v. Forklift Sys., Inc*., 510 U.S. 17, 21 (1993).

11

67)     A hostile work environment exists, in violation of 42 U.S.C. Sect. 2000(e), et seq., when (1) an employee belongs to a protected group, (2) the employee has been subject to unwelcome harassment, (3) the harassment was based on a protected characteristic, (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment, and (5) the employer is responsible for such environment under a theory of vicarious or direct liability.

68)     Plaintiff is an African American woman and guaranteed specific civil rights under Title VII of the Civil Rights Act of 1964, as amended.

69)     Plaintiff, at all times relevant herein, was qualified to perform her duties as Accounting Manager, Assistant Finance Director, and Acting Finance Director.

70)     During the course and scope of her employment with Defendant, as described fully in the General Allegations, Plaintiff was subjected to discriminatory treatment because of her race and color. Despite being a hardworking employee with a demonstrated record of exceptional service, Plaintiff was actively mistreated by Defendant and its management, treated differently compared to similarly situated non-African American employees and ultimately demoting and forcing Plaintiff's resignation on the basis of her race and color.

71)     Defendant was aware of the ongoing discriminatory treatment Plaintiff was experiencing.

72)     Defendant took no action to resolve the discriminatory treatment against Plaintiff. Instead, Defendant allowed the discriminatory treatment to continue and ultimately demoted Plaintiff, threatened to terminate her, and forced her resignation on discriminatory grounds.

12

73)    The discrimination experienced by Plaintiff was sufficiently severe and pervasive to create a discriminatory and abusive working environment.

74)    Plaintiff, who was the victim of race and color-based discrimination, was subsequently demoted and forced to resign from her employment with Defendant on the basis of her race and color.

75)    Defendant's unlawful employment practices, as complained of above, deprived Plaintiff of her statutory rights under Title VII.

76)    Defendant and its employees/agents discriminated against Plaintiff with respect to her employment by subjecting Plaintiff to continued discriminatory treatment and a hostile work environment.

77)    Defendant's actions are in violation of Title VII because Defendant discriminated against Plaintiff and created a hostile work environment, resulting in a loss of compensation, terms and conditions and/or privileges of Plaintiff's employment and thereby damaged her.

78)    As a direct and proximate result of Defendant's conduct and its employees' actions, Plaintiff has suffered irreparable harm through the loss of gainful employment and the loss of valuable employment benefits, including benefits which she would have continued to receive had she not been demoted and forced to resign.

79)    What is more, the unlawful employment practices complained of above committed by Defendant were willful, wanton, intentional and with malice or with reckless indifference to Plaintiff's statutorily protected rights, such that Plaintiff is entitled to punitive damages.

80)     Plaintiff has been required to retain the legal services of the undersigned Counsel to enforce her rights under Title VII and is required to pay her attorney a reasonable fee for services rendered in this cause of action.

### COUNT IV – HOSTILE WORK ENVIRONMENT IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT OF 1992

81)     Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 33 above as if fully set forth herein.

82)     A hostile work environment claim arising from the FCRA is analyzed under the same laws applicable to Title VII claims.

83)     A hostile work environment exists, in violation of Fla. Stat. Chapter 760.10(1)(a), when (1) an employee belongs to a protected group, (2) the employee has been subject to unwelcome harassment, (3) the harassment was based on a protected characteristic, (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment, and (5) the employer is responsible for such environment under a theory of vicarious or direct liability.

84)     Plaintiff is an African American woman and guaranteed specific civil rights under the Florida Civil Rights Act of 1992, Fla. Stat. 760.10 et. seq.

85)     Plaintiff, at all times relevant herein, was qualified to perform her duties as Accounting Manager, Assistant Finance Director, and Acting Finance Director.

86)     During the course and scope of her employment with Defendant, as described fully in the General Allegations, Plaintiff was subjected to discriminatory treatment because of her race and color. Despite being a hardworking employee with a demonstrated record of exceptional service, Plaintiff was actively mistreated by Defendant and its management, who treated Plaintiff differently compared to similarly situated non-African American employees and

14

ultimately demoting Plaintiff, threatening her termination, and forcing her to resign her employment on the basis of her race and color.

87)     Defendant was aware of the ongoing discriminatory treatment Plaintiff was experiencing.

88)     Defendant took no action to resolve the discriminatory treatment against Plaintiff. Instead, Defendant allowed the discriminatory treatment to continue and ultimately demoted Plaintiff, threatened to terminate her, and forced her resignation on discriminatory grounds.

89)     The discrimination experienced by Plaintiff was sufficiently severe and pervasive to create a discriminatory and abusive working environment.

90)     Plaintiff, who was the victim of race and color-based discrimination, was subsequently demoted and forced to resign from her employment with Defendant on the basis of her race and color.

91)     Defendant's unlawful employment practices, as complained of above, deprived Plaintiff of her statutory rights under the FCRA.

92)     Defendant and its employees/agents discriminated against Plaintiff with respect to her employment by subjecting Plaintiff to continued discriminatory treatment and a hostile work environment.

93)     Defendant's actions are in violation of the FCRA because Defendant discriminated against Plaintiff and created a hostile work environment, resulting in a loss of compensation, terms and conditions and/or privileges of Plaintiff's employment and thereby damaging her.

94)     As a direct and proximate result of Defendant's conduct and its employees' actions, Plaintiff has suffered irreparable harm through the loss of gainful employment and the loss of valuable employment benefits, including benefits which she would have continued to receive had she not been demoted and forced to resign.

95)     What is more, the unlawful employment practices complained of above committed by Defendant were willful, wanton, intentional and with malice or with reckless indifference to Plaintiff's statutorily protected rights, such that Plaintiff is entitled to punitive damages.

96)     Plaintiff has been required to retain the legal services of the undersigned Counsel to enforce her rights under the FCRA and is required to pay her attorney a reasonable fee for services rendered in this cause of action.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, SHERNETT LEE, demands judgment against Defendant, VILLAGE OF ROYAL PALM BEACH, and requests the following relief:

a)     A judgment in favor of Plaintiff for Defendant's violations of Title VII and the FCRA;

b)     An award to Plaintiff for actual damages Plaintiff suffered;

c)     An award to Plaintiff of back pay and value of lost employment benefits;

d)     An award to Plaintiff of front pay for the years she would have worked absent Defendant's discriminatory treatment;

e)     A judgment in favor of Plaintiff for compensatory damages for the embarrassment, anxiety, humiliation and emotional distress Plaintiff has suffered and continues to suffer;

16

f)      An award to Plaintiff for punitive damages Plaintiff sustained as a direct and proximate result of Defendant's unlawful conduct;

g)      An award to Plaintiff for prejudgment interest on all monetary recovery obtained;

h)      An award to Plaintiff for all attorney's costs and fees reasonably incurred in connection with claims made on her behalf in this action;

i)      An injunction permanently enjoining Defendant, any of its applicable officers, agents, employees, assignees, and/or persons in active concert of participation with them, from engaging in any employment practices in violation of Title VII and the FCRA; and

j)      Such other and further relief as this Court deems just and equitable.


**JURY TRIAL DEMAND**

Plaintiff   demands   a   trial   by   jury   on   all   issues   so   triable.

Dated: March 31, 2026


Respectfully submitted,

**Sconzo Law Office, P.A.**
300 Ave of the Champions, Suite 260
Palm Beach Gardens, FL 33418
Telephone: (561) 729-0940
Facsimile: (561) 491-9459

By: **/s/ Gregory S. Sconzo**
GREGORY S. SCONZO, ESQUIRE
Florida Bar No.: 0105553
ALEXANDER B. GAVULIC, ESQUIRE
Florida Bar No.: 1065451
**Primary Email:** greg@sconzolawoffice.com
**Primary Email:** alexander@sconzolawoffice.com
**Secondary Email:** dilma@sconzolawoffice.com